UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| MOTORISTS MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:22-CV-00034 |
| JACK FROST, LLC, JAGOE HOMES, INC., JUSTIN W. HICKS AND ASHLEY D. HICKS INDIVIDUALLY AND AS THE PARENTS AND NATURAL GUARDIANS OF THEIR MINOR CHILDREN, E.H. AND J.H., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Motorists Mutual Insurance Company ("Motorists"), for its Complaint for Declaratory Judgment against Defendants Jack Frost, LLC ("Frost"), Jagoe Homes, Inc. ("Jagoe"), Justin W. Hicks and Ashley D. Hicks individually and as the parents and natural guardians of their minor children E.H. and J.H. ("the Hicks"), states as follows:

1.      This Complaint is for declaratory judgment brought pursuant to 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure.

## THE PARTIES

2.      Motorists is an insurance company organized and existing under the laws of Ohio with its principal place of business in Columbus, Ohio.  Motorists is licensed to do business in the State of Indiana, and it is a citizen of Ohio.

3.      Defendant Frost is an Indiana corporation with its principal place of business in Evansville, Indiana.  It is a citizen of Indiana.

1

4.     Defendant Jagoe is a Kentucky corporation with its principal place of business in Owensboro, Kentucky.  It is a citizen of Kentucky.

5.     The Hicks are citizens of Indiana.

## JURISDICTION AND VENUE

6.      This matter is a civil action for which the District Court of the United States has original jurisdiction because there exists a diversity of citizenship between the Plaintiff and the Defendants as provided in 28 U.S.C. §1332(a) and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

7.     The venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

## FACTS RELATING TO THE UNDERLYING ACTION

8.     On September 26, 2019, the Hicks sued Jagoe, asserting that the house that they purchased in Elberfield, Indiana, built in 2015 for which the Hicks contracted to pay $302,099.00, was deficiently completed, leading to damages to the Hicks.  The matter is filed under Cause No. 87C01-1909-PL-001564 in the Warrick Circuit Court (Indiana) ("the Underlying Action").  A copy of the Complaint filed in the Underlying Action is attached hereto as Exhibit A.

9.      The Complaint in the Underlying Action includes the following specific allegations against Jagoe:

- Count I – Construction Defects under I.C.§32-27-3 – the Hicks allege that mold was discovered within the home within one year of occupancy/ownership.  They allegedly contacted Jagoe to remediate in July 2016.  After some remediation was completed, the Hicks allege more mold arose on November 27, 2016 which led to a notice to Jagoe on September 5, 2017.  The Hicks allege that they performed a mold analysis in September 2017 and gave a subsequent notice on September 16, 2018 for which Jagoe responded with a "disaster team" to remedy the issues.  The Hicks allege on July 3, 2019 more mold was discovered and an air test was completed leading to a report dated July 9, 2019.  The Hicks alleged days later additional mold

was found and an additional test was completed on July 22, 2019.  According to the Complaint, the Hicks no longer reside at the house and pursuant to the Complaint, they wish for the entire purchase price of the home $302,099.00 returned as damages.

- Count II – Personal Injuries – the Hicks allege that they incurred personal injuries by exposure to mold.

10.     On November 18, 2021, Jagoe filed a Third Party Complaint against Frost.  A copy of the Third Party Complaint is attached hereto as Exhibit B.

11.     The Third Party Complaint alleges that, even though Jagoe is not liable for any of the allegations made by the Hicks in the Complaint in the Underlying Action, Frost contractually agreed to provide certain materials and work under a contract entered into between Jagoe and Frost and that, as a result, Frost is contractually obligated to defend and, if necessary, indemnify Jagoe for any damages that might be claimed by the Hicks in the Underlying Action.

12.     The Third Party Complaint includes the following counts:

- Count I – Contractual Indemnity – The Third Party Complaint states that, subject to Section IX of the contract between Jagoe and Frost (referenced below), Frost is required to defend, indemnify and hold harmless Jagoe from any and all claims relating to the Hicks' property, Jagoe is entitled to full indemnification with regard to the Hicks' Complaint, Frost has breached its duty of indemnification and Jagoe has been harmed.
- Count II – Common Law Indemnity – Jagoe asserts that Frost provided a portion of the materials and certain work for the Hicks house and that Jagoe is wholly without fault for the damages.  Jagoe alleges that Frost is the at fault party and any fault assigned to Jagoe would be derivative in nature to the actions or inactions of Frost and thus Frost has a common law duty to indemnify Jagoe.
- Count III – Breach of Contract – Jagoe asserts that Frost was required to obtain liability insurance and name Jagoe as an additional insured.  To the extent that Frost has failed to obtain such insurance, Frost has breached its contract with Jagoe which has been damaged.

13.     The Third Party Complaint includes as an exhibit a contract executed between Jagoe and Frost, entitled the Master Agreement ("Agreement").  The Agreement includes the following relevant language:

## MASTER AGREEMENT

THIS CONTRACT is made this 30th day of September, 2008 between Jagoe Homes, Inc. ("GENERAL CONTRACTOR"), corporation with an address at 3624 Wathens Crossing, Owensboro, KY 42301 and Jack Frost, Inc. ("SUPPLIER/CONTRACTOR")…

\* \* \*

In consideration of the covenants and agreements contained herein and intending to be legally bound, the GENERAL CONTRACTOR and SUPPLIER/CONTRACTOR agree as follows:

\* \* \*

## V.    INSURANCE

Prior to the delivery of any Material and/or the commencement of any Work, the SUPPLIER/CONTRACTOR shall deliver to the GENERAL CONTRACTOR a certificate evidencing the SUPPLIER/CONTRACTOR'S insurance coverage, naming the GENERAL CONTRACTOR as additional insured and will provide the GENERAL CONTRACTOR with an additional insured endorsement evidencing the GENERAL CONTRACTOR'S status *as an additional named insured*, with companies acceptable to the GENERAL CONTRACTOR.   The insurance carrier must be "A-" rated to better. Annually, SUPPLIER/CONTRACTOR shall supply GENERAL CONTRACTOR with a new certificate of insurance, and is further required to provide the GENERAL CONTRACTOR with new additional insured endorsement, naming GENERAL CONTRACTOR as an additional insured. It is hereby understood and agreed that such additional insured coverage as is afforded by the SUPPLIER/CONTRACTOR policies shall be primary and no contribution shall be permitted from any insurance or self-insurance maintained by GENERAL CONTRACTOR.

\* \* \*

SUPPLIER/CONTRACTOR will provide coverage in the following minimum amounts:

\* \* \*

**B.**    Commercial General Liability Insurance including:

1.    Bodily Injury Liability

2.    Property Damage Liability

4

With Limits as Follows:
General Aggregate                     $1,000,000
Products-Compl./OPS Aggregate         $1,000,000
Personal Advertising Injury           $1,000,000
Each Occurrence                       $1,000,000

(emphasis added)

\* \* \*

## IX.    INDEMNIFICATION

SUPPLIER/CONTRACTOR shall indemnify, defend and hold harmless the GENERAL CONTRACTOR and Owens, and each of their agents and employees, from and against any and all claims, actions, losses, expenses (including, without limitation, attorney's fees) and damages of any kind including, without limitation, in connection with any personal injury (including death), to any person (including, without limitation, anyone employed directly or indirectly by the SUPPLIER/CONTRACTOR, the GENERAL CONTRACTOR or OWNERS) property damage or mechanics' lien or similar claim, arising out of or related to the delivery of the Material, the performance of the Work and/or any other activity at the Site by the SUPPLIER/CONTRACTOR, its employees, subcontractors, materialmen, laborers, agents or representatives or arising out of or relating to any failure or default under this Contract.  The foregoing indemnity shall not be limited in any way by any insurance requirements or any other provision of this Contract or by any limitation on the amount or type of damages, compensation, proceeds or benefits payable by or for the SUPPLIER/CONTRACTOR, its employees, subcontractors, materialmen, laborers, agents or representatives under insurance policies, workers' or workmen's compensation acts, disability benefit acts, or other employee benefit acts.  These indemnity obligations apply also for incidents arising out of the active or passive negligence of GENERAL CONTRACTOR, and the only circumstances that these obligations do not apply are those involving the sole negligence or willful misconduct of the GENERAL CONTRACTOR.  Such defense and indemnification obligations of SUPPLIER/CONTRACTOR will survive the expiration or termination of the agreement, and will continue until the last day permitted by law for the filing of any claims as to which the indemnification may apply.

(Exhibit A to Third Party Complaint in Underlying Action)

### <u>JAGOE'S TENDER OF THE COMPLAINT IN THE UNDERLYING ACTION TO FROST</u>

14.     On August 21, 2019, Motorists notified Frost of the incident that had been reported relating to the Hicks' house for which there had been no complaint yet filed.  In its letter to Frost, Motorists reserved its rights to deny any defense and/or indemnity to Frost if Hicks litigated the issue against Frost because of the Fungi or Bacteria Exclusion in the Commercial General Liability Coverage Form of the insurance policy that Motorists issued to Frost.

15.     On December 3, 2019, Motorists supplemented an earlier August 12, 2019 reservation of rights letter to Jagoe, which Motorists is defending in the Underlying Action under an insurance policy it issued to Jagoe, which stated that Motorists would defend Jagoe under a reservation of rights but reserved its rights to deny indemnity, in whole or in part, because of the Fungi or Bacteria Exclusion in its Policy.

16.     Motorists is currently defending both Jagoe for the Complaint in the Underlying Action and defending Frost for the Third Party Complaint with the appropriate separation within Motorists.

## CURRENT STATUS OF THE UNDERLYING ACTION

17.      On October 24, 2021, Jagoe filed a Motion for Summary Judgment in the Underlying Action on the contractual issues, asserting that the warranty document which it executed with the Hicks excludes any damages due to mold and that the warranty time has expired.  Jagoe also argues that, to the extent, there are negligence claims they have been made outside of the applicable statute of limitations.

18.     On December 8, 2021, the Hicks responded to Jagoe's Motion for Summary Judgment in the Underlying Action, asserting that genuine issues of material fact exist to preclude summary judgment and specifically that the warranty does not comply with Indiana law, that instead they are covered by the implied warranty of habitability and that a waiver of

such has not been appropriately done.  The Hicks also argue that the statute of limitations does not bar their personal injury claims.

19.     As of the date of the filing of this Complaint for Declaratory Judgment, the trial court in the Underlying Action has made no determination in regards to Jagoe's Motion for Summary Judgment.

## THE FROST POLICY

20.      Motorists issued an insurance policy to Frost effective September 15, 2015 to September 15, 2016, under Policy No. 33-257549-20E ("the Frost Policy").  A copy of the Policy[1] is attached hereto as Exhibit C.

21.     The Frost Policy includes the following relevant language in its Declarations of its Commercial General Liability Coverage Form ("CGL Coverage Form"):

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\*   \*   \*

| Summary of Coverages | Limits of Insurance |
|---|---|
| **EACH OCCURRENCE LIMIT** | **$2,000,000** |
| **GENERAL AGGREGATE LIMIT (OTHER THAN PRODUCTS-COMPLETED OPERATIONS)** | **$4,000,000** |
| **PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT** | **$4,000,000** |

22.     The insuring agreement of the CGL Coverage Form includes the following language:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

---

[1] The Frost Policy was renewed for annual terms effective September 15, 2016 and expiring on September 15, 2019, all of which contain the identical policy language referenced in this Complaint.

\* \* \*

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

   **1.**    **Insuring Agreement**

       **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

23.    The CGL Coverage Form includes the following exclusions:

   **2.**    **Exclusions**

    This insurance does not apply to:

\* \* \*

    **k.**    **Damage to Your Product**

       "Property damage" to "your product" arising out of it or any part of it.

    **l.**    **Damage To Your Work**

       "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

24.    The CGL Coverage Form includes the following conditions:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*   \*   \*

**2.**    **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

**a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

\*   \*   \*

**4.**    **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A**  or **B** of this Coverage Form, our obligations are limited as follows:

**a.**     Primary Insurance

This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c**. below.

**b.**     Excess Insurance

**(1)**     This insurance is excess over:

\*   \*   \*

**(b)**     Any other primary insurance available e to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment or an endorsement.

25.     The CGL Coverage Form includes the following definitions to assist in the construction of the language found in the provisions:

**SECTION V – DEFINITIONS**

\*   \*   \*

**3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*   \*   \*

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*   \*   \*

10

**16.**    "Products-completed operations hazard":

**a.**    Includes all "bodily injury" and "property damage" occurring away from premises you won or rent and arising out of "your product" or "your work" except.

    **(1)**    Products that are still in your physical possession; or

    **(2)**    Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

        **(a)**    When all of the work called for in your contract has been completed.

        **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.**    Does not include "bodily injury" and "property damage" arising out of:

    **(1)**    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)**    The existence of tools, uninstalled equipment or abandoned or unused materials; or

11

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to eh General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

*   *   *

**21.** "Your product":

  **a.** Means:

   **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or dispose of by:

    **(a)** You:

    **(b)** Others trading under your name; or

    **(c)** A person or organization whose business or assets you have acquired; and

   **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

       **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

       **(2)**    The providing of or failure to provide warnings or instructions.

    **c.**    Does not include vending machines or other property rented to or located for the u se of others but not sold.

**22.**    "Your work":
    **a.**    Means:

       **(1)**    Work or operations performed by you or on your behalf; and

       **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

       **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

       **(2)**    The providing of or failure to provide warnings or instructions.

26.    The CGL Coverage Form includes the following endorsements:

**Additional Insured – Owners, Lessees Or Contractors – Schedule Person Or Organization**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

\*   \*   \*

13

A.    **Section II – Who is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:

   1.    Your acts or omissions; or

   2.    The acts or omissions of those acting on your behalf;

   In the performance of your ongoing operations for the additional insured(s).

B.    With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

   1.    All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   2.    That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

*   *   *

**NAME OF ADDITIONAL INSURED PERSON(S) OR ORGANIZATION(S):**

JAGOE HOMES
PO BOX 23019
OWENSBORO, KY 42304 3019

*   *   *

**Additional Insured – Owners, Lessees or Contractors – Completed Operations**

14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard."[2]

\*   \*   \*

**Waiver Of Transfer Of Rights of Recovery Against Others To Us – Scheduled                                        CG 7035 (10-06)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEAD READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

We waive any right of recovery we may have against the person or organization shown in the Schedule below because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard".  This waiver applies only to the person or organization shown in the Schedule below.

Our rights may only be waived prior to a loss.  The insured must do nothing after a loss to impair out rights of recovery against others.

\*   \*   \*

**Fungi Or Bacteria Exclusion                              CG 2167 (12-04)**

---

[2] Jagoe is not listed in the Schedule of Additional Insureds.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.**     The following exclusion is added to Paragraph **2.** Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2.**     **Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.**     "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.**     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that, are on, or are contained in, a good or product intended for bodily consumption.

\*   \*   \*

**C.**     The following definition is added to the **Definitions** Section:

16

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

\* \* \*

**ADDITIONAL INSURED CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN WRITTEN CONTRACT WITH YOU**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A.     **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization when you and such person or organization have agreed in a written contract that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.     Your acts or omissions; or

2.     The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional insured; or

3.     When required in a written contract, "your work" included within the "products-completed operations hazard."

B.     With respect to the insurance afforded to these additional insureds, the following exclusions apply:

This insurance does not apply to:

1.     "Bodily injury," "property damage" or "personal and advertising injury" arising out of the rendering of, or the

17

failure to render, any professional architectural, engineering or surveying services, including

    **a.**    The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **b.**    Supervisory, inspection, architectural or engineering activities.

**2.**    Any negligent act or omission committed by any additional insured.

Exclusion **B.2.** does not apply to liability assumed by you in a written contract that is an "insured contract."

**3.**    "Bodily injury," "property damage" or "personal and advertising injury" that occurs prior to the execution of the written contract.

**4.**    "Your work" completed prior to the effective date of this endorsement and included in the "product-completed operations hazard."

**5.**    "Bodily injury" or "property damage" caused by "your work" included within the "products-completed hazard," when not required in a written contract.

**C.**    The limits of insurance applicable to the additional insured are those specified in the written contract or in the Declarations for this Coverage Form, whichever are less.  If no limits are specified in the written contract, the limits applicable to the additional insured are those specified in the Declarations for this Coverage Form.  These limits of insurance are inclusive of and not in addition to the limits of insurance shown in the Declarations.

**D.**    **Section IV – Commercial General Liability Conditions, 4., Other Insurance** is amended to include:

Coverage provided by this endorsement is excess over any other valid and collectible insurance available to the additional insured whether the other insurance is primary, excess, contingent or on

any other basis unless the written contract between you and the additional insured requires this insurance to be primary.

\* \* \*

**Primary and Noncontributory – Other Insurance Condition**
**CG 7061 (04-13)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other primary insurance available to an additional insured under your policy provided that:

**(1)**     The additional insured is a Named Insured under such other insurance; and

**(2)**     You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other primary insurance available to the additional insured.

27.     The Frost Policy also includes a Commercial Umbrella Coverage Form ("the Umbrella Coverage Form").  The Declarations Page of the Umbrella Coverage Form includes the following limits:

**COMMERCIAL UMBRELLA**        $5,000,000 EACH OCCURRENCE
**LIMITS OF INSURANCE**             $5,000,000 AGGREGATE

28.     The Commercial Umbrella Coverage Form includes the following language in its insuring agreement.

19

**SECTION I – COVERAGES**

**A.     Insuring Agreement**

We will pay on behalf of the insured the "ultimate net loss":

**a.**     In excess of the "underlying limit"; or

**b.**     For an "occurrence" covered by this policy which is either excluded or not covered by the "underlying insurance";

because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this Coverage Form applies, caused by an "occurrence" anywhere in the world.

29.     The Umbrella Coverage Form includes the following exclusions:

**B.     Exclusion.**

This insurance does not apply to:

* * *

**h.**     "Property damage" to:

* * *

**(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**i.**    "Property damage" to "your product" arising out of it or any part of it.

**j.**    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**k.**    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

30.    The Umbrella Coverage Form includes the following characterization of an "insured":

**SECTION III – WHO IS AN INSURED**

Each of the following is an insured under this policy to the extent set forth below:

\* \* \*

**E.**    Anyone for whom you have agreed in writing to provide insurance such as is provided in this Coverage Form, but only for operations performed by you or on your behalf, or for facilities you own or use.

21

F.   Anyone else who is an insured under any policy of "underlying insurance" but only to the extent insurance is provided by that policy and subject to all its limitations, other than the limits of liability.

31.   The Umbrella Coverage Form includes the following endorsements:

**Fungi Or Bacteria Exclusion          CXSP X100 (12-04)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IF CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

A.   It is agreed that no coverage is provided by the policy for claims, suits, actions or proceedings against the insured arising out of:

1.   "Bodily injury," "property damage," "personal injury" or "advertising injury" which would not have occurred or taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

2.   Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

With regard to "bodily injury" or "property damage," this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B.   The following definition is added to the **DEFINITIONS** Section:

22

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

\* \* \*

**Cross Suits Exclusion              CXSP X27**

**THIS ENDORSEMENT CHANGE THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

This insurance does not apply to claims, suits, actions or proceedings brought by any Named Insured or any additional insured under this Coverage Form against any other Named Insured or additional insured under this Coverage Form.

## THE JAGOE POLICY

32.     Motorists issued an insurance policy to Jagoe effective January 28, 2019 to January 28, 2020 under Policy No. 33.252479-10E ("the Jagoe Policy").  A copy of the Jagoe Policy is attached hereto as Exhibit D.

33.     The Jagoe Policy includes the following relevant language in its Commercial General Coverage Form and Umbrella Coverage Form respectively:

**Fungi Or Bacteria Exclusion              CG 2167 (12-04)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.**     The following exclusion is added to Paragraph **2.** Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

23

**2.** **Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that, are on, or are contained in, a good or product intended for bodily consumption.

\* \* \*

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

\* \* \*

**Fungi Or Bacteria Exclusion** **CXSP X100 (12-04)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IF CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

A.      It is agreed that no coverage is provided by the policy for claims, suits, actions or proceedings against the insured arising out of:

    1.      "Bodily injury," "property damage," "personal injury" or "advertising injury" which would not have occurred or taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    2.      Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

    With regard to "bodily injury" or "property damage," this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B.      The following definition is added to the **DEFINITIONS** Section:

    "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

## <u>REQUEST FOR DECLARATORY RELIEF</u>

34.      While Motorists has extended a defense to both Jagoe and Frost for the Underlying Action and the Third Party Complaint respectively, Motorists has no obligation to indemnify Jagoe and/or Frost for any judgment which may be entered against Jagoe for the Complaint and for Frost in the Third Party Complaint.

25

35. The Fungi and Mold Exclusion applies to eliminate coverage that might otherwise be available to Jagoe under the Frost Policy and the Jagoe Policy and to Frost under the Frost Policy.

36. Because the allegations in both the Complaint and the Third Party Complaint reference only damages that would not have occurred but for exposure or presence of "fungi" as defined in the Fungi or Mold Exclusion, the defense for both Jagoe and Frost can also be withdrawn.

37. To the extent that the Court believes that there is either a genuine issue of material fact or that there are other damages that are alleged in the Underlying Action that do not fit within the Fungi or Bacteria Exclusion, Motorists requests a determination that (a) any damages that would not have occurred but for mold are excluded under both the Frost Policy and the Jagoe Policy; (b) the  Frost Policy extends coverage  for Frost for the Third Party Complaint only under the  CGL Coverage Form and not the  Umbrella Coverage  Form because of the Cross Suits Exclusion.

WHEREFORE, Motorists Mutual Insurance Company requests that the Court make the following declarations:

(a) That the Frost Policy does not extend coverage for either Frost or Jagoe as an additional insured for the Underlying Action because the Fungi or Bacteria Exclusion applies to bar such coverage;

(b) That the Jagoe Policy does not extend coverage for Jagoe for the Underlying Action because the Fungi or Bacteria Exclusion applies to bar such coverage;

(c)     That because all of the damages alleged by the Hicks in the Underlying

Action and that also apply in the Third Party Complaint would not have

occurred but for to mold, there is no potential for coverage under either the

Frost Policy or the Jagoe Policy and thus defense to Frost and Jagoe be

withdrawn.

Furthermore, Plaintiff Motorists Mutual Insurance Company requests relief as designated

in this Complaint, for costs of this action and for all other relief due and proper in the premises

Respectfully submitted,

KIGHTLINGER & GRAY, LLP

By:     *s/ Ginny L. Peterson*
        Ginny L. Peterson, Attorney No.  20305-41
        One Indiana Square, Suite 300
        211 N. Pennsylvania Street
        Indianapolis, IN  46204
        Email:  gpeterson@k-glaw.com
        Telephone:  (317) 638-4521
        Facsimile:  (317) 636-5917
        *Attorneys for Plaintiff*

210760\61808528-1